IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 18, 2012 Session

# HANNAH ANN CULBERTSON v. RANDALL ERIC CULBERTSON

**Appeal from the Circuit Court for Shelby County**
**No. CT-005484-10     James F. Russell, Judge**

---

**No. W2011-00860-COA-R10-CV - Filed May 23, 2012**

---

This extraordinary appeal arises from the trial court's order granting Wife's motion for disclosure of Husband's psychological records. After thorough consideration, we conclude that the trial court erred by failing to consider Husband's claims that his psychological records were protected from disclosure by the psychologist-client privilege, and that he did not waive the privilege. Accordingly, we vacate the judgment of the trial court and remand this matter to the trial court for further proceedings.

**Tenn. R. App. P. 10 Extraordinary Appeal by Permission; Judgment of the Circuit Court Vacated and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Rachael E. Putnam and Jason D. Nowlin, Memphis, Tennessee, for the appellant, Randall Eric Culbertson.

Amy J. Amundsen and Mary L. Wagner, Memphis, Tennessee, for the appellee, Hannah Ann Culbertson.

## OPINION

### I.  Background and Procedural History

Randall Eric Culbertson ("Husband") and Hannah Ann Culbertson ("Wife") were married on May 1, 2004. Two minor children were born of the marriage. In July 2010, however, Husband and Wife separated.

On November 8, 2010, Wife filed a complaint for divorce in the Circuit Court of

Shelby County.[1]  In her complaint, Wife alleged numerous instances of physical and emotional abuse by Husband toward Wife and the parties' children.  In response, on November 19, 2010, Husband filed an answer and counter-complaint for divorce, wherein Husband denied Wife's allegations of abuse and demanded "strict legal proof thereof."  In his counter-complaint for divorce, Husband sought to be awarded sole decision-making authority and sole custody of the parties' children.

After attending mediation on November 22, 2010, the parties reached an agreement on temporary matters.  On December 3, 2010, the trial court entered a Consent Order on Temporary Parenting Schedule and Temporary Support ("Consent Order").  The Consent Order provides, in part, that:

> [Husband] shall continue counseling with Dr. Deason pending his commencing therapy with Dr. Russell Crouse, Ph.D. on December 14, 2010 and Mother shall commence therapy with Dr. Lisa Clark, Ph.D.  The parties' minor children, and parents, as needed, shall be evaluated by Dr. Jane Clement and upon completion of her evaluation, Dr. Clement shall serve as the children's counselor.  The parties agree that Dr. Clement has permission to speak with the parties' respective counselors and the parties shall cooperate in making the children available for the evaluation and counseling.  Dr. Clement shall assist the Court and the parties by making recommendations as to the best parenting arrangement for the parties and children.

On February 7, 2011, Wife issued three subpoenas *duces tecum*, and three notices to take depositions *duces tecum*, to three of Husband's psychologists, specifically, Dr. David Deason, Dr. Wyatt Nichols, and Dr. Russell Crouse.[2]  Wife requested that each psychologist produce "all notes and records for or pertaining to sessions with [Husband], and any test results and/or data received from the initial therapy session to the present date."  In response, Husband filed a motion to quash arguing that the information sought by Wife was not discoverable because it was protected by the psychologist-client privilege under Tennessee Code Annotated section 63-11-213 (2010).  On February 18, 2011, Wife filed a "Motion for Release of [Husband's] Psychological Records, to Compel [Husband] to Execute HIPAA Authorization, and for Qualified Protective Order" ("Motion for Release of Psychological

---

[1] Wife also sought and obtained an ex parte order of protection against Husband, which was extended numerous times throughout the proceedings.

[2] Husband received treatment from Dr. Nichols throughout 2009 until March 2010,  received treatment from Dr. Deason for several months towards the end of 2010, and was receiving treatment from Dr. Crouse at the time the subpoenas were issued.

Records"). Thereafter, Wife filed a response to Husband's motion to quash, Husband filed a response to Wife's Motion for Release of Psychological Records, and each party supported their respective pleadings with detailed memorandums of law.

On March 25, 2011, the trial court conducted a hearing on Husband's motion to quash and Wife's Motion for Release of Psychological Records. Husband argued that his privileged psychological records should not be released because he did not waive the psychologist-client privilege, the parties agreed in the Consent Order that Dr. Clement would assist the trial court with psychological evaluations and any recommendations needed to make the best parenting arrangement, and Wife had access to other readily available information to support her allegations of Husband's physical and emotional abuse. Despite Husband's arguments, the trial court granted Wife's Motion for Release of Husband's Psychological Records subject to a protective order. In light of this ruling, the trial court granted Husband's motion to quash as it related to the depositions of his psychologists subject to later renewal by Wife.

Following the hearing, counsel for Wife provided Husband's counsel with a proposed order granting her Motion for Release of Psychological Records, as well as a "Qualified Consent Protective Order as to Psychological Records of [Husband]" ("Qualified Consent Protective Order"). Husband refused to agree to the entry of the Qualified Consent Protective Order because he did not consent to the order, and because it provided, in part, that his psychological records could be disclosed to or discussed with:

Experts hired by a party to this action for the purpose of giving advice or testimony in this action; [and]

Any person who is noticed for deposition or otherwise subpoenaed to testify in this matter; . . . .

Given their refusal to agree on the language of the proposed Qualified Consent Protective Order, counsel for the parties presented the issue to the trial court. Despite his objections, the trial court ordered Husband's counsel to sign the proposed Qualified Consent Protective Order. On April 4, 2011, the trial court entered the Qualified Consent Protective Order and an order granting Wife's Motion for Release of Psychological Records. Subsequently, on June 20, 2011, this Court granted Husband's application for extraordinary appeal under Rule 10 of the Tennessee Rules of Appellate Procedure.[3]

_____

[3]Rule 10(a) of the Tennessee Rules of Appellate Procedure provides:

(continued...)

## II. Issue Presented and Standard of Review

On appeal, the sole issue for our review is whether the trial court erred in granting Wife's Motion for Release of Psychological Records. "Because decisions regarding pretrial discovery are inherently discretionary, they are reviewed using the 'abuse of discretion' standard of review." *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (citations omitted). A trial court abuses its discretion when it "causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011) (citing *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010)). "When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the lower court's legal determinations de novo without any presumption of correctness." *Lee Medical*, 312 S.W.3d at 525 (citing *Johnson v. Nissan N. Am., Inc.,* 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 212 (Tenn. Ct. App. 2002)).

## III. Discussion

Husband argues that the trial court erred in granting Wife's Motion for Release of Psychological Records because his psychological records are protected from discovery by the psychologist-client privilege under Tennessee Code Annotated section 63-11-213. On the other hand, Wife argues that the trial court correctly ordered disclosure of Husband's psychological records because Husband waived the psychologist-client privilege.

As recently stated by our supreme court in *Powell v. Cmty. Health Sys., Inc.*, 312 S.W.3d 496 (Tenn. 2010):

> When a discovery dispute involves the application of a privilege, the court's judgment should be guided by the following three principles. First,

---

[3](...continued)
An extraordinary appeal may be sought on application and in the discretion of the appellate court alone of interlocutory orders of a lower court from which an appeal lies to the Supreme Court, Court of Appeals or Court of Criminal Appeals: (1) if the lower court has so far departed from the accepted and usual course of judicial proceedings as to require immediate review, or (2) if necessary for complete determination of the action on appeal as otherwise provided in these rules. The appellate court may issue whatever order is necessary to implement review under this rule.

Tennessee's discovery rules favor discovery of all relevant, non-privileged information. Second, even though privileges do not facilitate the fact-finding process, they are designed to protect interests and relationships that are regarded as sufficiently important to justify limitations on discovery. Third, while statutory privileges should be fairly construed according to their plain meaning, they need not be broadly construed.

*Id.* at 504 (citing *Lee Medical, Inc.*, 312 S.W.3d at 525). Furthermore, as explained in *State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Group Trust*, 209 S.W.3d 602 (Tenn. Ct. App. 2006):

To resolve issues pertaining to the discovery of an adversary's claim of . . . privilege, the trial court and the parties are to follow sequential steps, which entail shifting burdens of proof.

The party seeking discovery, has the burden to establish (1) that the material being sought is relevant to the subject matter involved in the pending action, (2) that the material being sought is not otherwise privileged, and (3) that the material being sought consists of documents or other tangible things. Once the party seeking discovery establishes a prima facie showing that the materials it sought were discoverable, the burden shifts to the party opposing discovery to show that the materials were . . . privileged . . . .

If it is established that a portion of the requested documents are [privileged], a protective order as to those documents is in order.

*Id.* at 617-18 (citations omitted).

Tennessee law recognizes a privilege against compelled disclosure of confidential communications between a psychologist and client.[4] Specifically, Tennessee Code

---

[4]In *Jaffe v. Redmond*, 518 U.S. 1 (1996), the United States Supreme Court explained the purpose behind the evidentiary privilege between a psychotherapist and patient:

Effective psychotherapy . . . depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears. Because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace. For this reason, the mere possibility of disclosure may impede development of the confidential relationship necessary for successful

(continued...)

Annotated section 63-11-213 provides that:

> [T]he confidential relations and communications between licensed psychologist or, psychological examiner or, senior psychological examiner or certified psychological assistant and client are placed upon the same basis as those provided by law between attorney and client; and nothing in this chapter shall be construed to require any such privileged communication to be disclosed.

Tenn. Code Ann. § 63-11-213 (2010). As indicated by the language of the statute, our legislature chose to treat the confidential communications between a psychologist and client the same as those between an attorney and client. Therefore, although very few Tennessee appellate courts have had the opportunity to analyze the psychologist-client privilege, cases discussing the attorney-client privilege are instructive.

The attorney-client privilege is the oldest privilege recognized in Tennessee both at common law and by statute. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 212 (Tenn. Ct. App. 2002) (citations omitted). The privilege "encourages full and frank communication between attorney and client by sheltering these communications from disclosure." *State ex rel. Flowers*, 209 S.W.3d at 615-16 (citing Tenn. Code Ann. § 23-3-105; *Federal Ins. Co. v. Arthur Anderson & Co.*, 816 S.W.2d 328, 330 (Tenn. 1991)). The attorney-client privilege, however, is not absolute, and does not encompass all communications between an attorney and a client. *Id.* at 616 (citing *Bryan v. State*, 848 S.W.2d 72, 80 (Tenn. Crim. App. 1992)). "[W]hether the attorney-client privilege applies to any particular communication is necessarily question, topic and case specific." *Bryan*, 848 S.W.2d at 80. To invoke the protection of the attorney-client privilege, the burden is on the client to "establish the communications were made pursuant to the attorney-client relationship and with the intention that the communications remain confidential." *State ex rel. Flowers*, 209 S.W.3d at 616 (citing *Bryan*, 848 S.W.2d at 80).

"The [attorney-client] privilege is designed to protect the client and because it belongs to the client, may be waived by him." *Smith Cnty. Educ. Assoc. v. Anderson*, 676 S.W.2d 328, 333 (Tenn.1984). "If a client divulges the communications he seeks to protect, then he

---

[4](...continued)
treatment.

*Id.* at 10 (citations omitted) (holding that a psychotherapist-patient privilege existed under federal common law, based in part on its recognition that "confidentiality is a *sine qua non* for successful psychiatric treatment.").

has waived the attorney-client privilege with respect to the reported communications and the attorney may testify to its contents." *State v. Buford*, 216 S.W.3d 323, 326 (Tenn. 2007) (citing *Bryan*, 848 S.W.2d at 80 (citing *Cooper v. United States*, 5 F.2d 824 (6th Cir.1925))). Waiver may also occur when the communications take place in the presence of a third party. *State ex rel. Flowers*, 209 S.W.3d at 616 (citing *Boyd*, 88 S.W.3d at 218-19 (citation omitted)). Moreover, as explained by the Tennessee Court of Criminal Appeals in *Bryan*:

> [A] party asserting the attorney-client privilege has impliedly waived it through the party's own affirmative conduct where three conditions exist:
>
> (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party;
>
> (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and
>
> (3) application of the privilege would have denied the opposing party access to information vital to his [or her] defense.

*Bryan*, 848 S.W.2d at 81 (citing *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975)).

Given the unique nature of child custody determinations, a parent's assertion of the psychologist-client privilege to prevent access to mental health records presents a more difficult issue than those raised in other situations involving the privilege. In child custody cases, the paramount consideration is the best interest of the child. Tenn. Code Ann. § 36-6-106(a) (2010); *Lentz v. Lentz*, 717 S.W.2d 876, 877 (Tenn. 1986). When a custody dispute arises between legal parents, courts must determine the child's best interests in light of the comparative fitness of the parents, *In re C.K.G.*, 173 S.W.3d 714 (Tenn. 2005) (citing *Parker v. Parker*, 986 S.W.2d 557, 562 (Tenn. 1999); *Bah v. Bah*, 668 S.W.2d 663, 665-66 (Tenn. Ct. App. 1983)), and must consider numerous factors including, where applicable, the following:

> (1) The love, affection and emotional ties existing between the parents . . . and the child;
> (2) The disposition of the parents . . . to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent ... has been the primary caregiver;
> (3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment . . . ;
> (4) The stability of the family unit of the parents . . . ;

(5) The mental and physical health of the parents . . . ;

(6) The home, school and community record of the child;

(7)(A) The reasonable preference of the child, if twelve (12) years of age or older;

(B) The court may hear the preference of a younger child on request. The preferences of older children should normally be given greater weight than those of younger children;

(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person . . . ;

(9) The character and behavior of any other person who resides in or frequents the home of a parent . . . and the person's interactions with the child; and

(10) Each parent's . . . past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents . . . to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child.

Tenn. Code Ann. § 36–6–106(a) (Supp. 2011).

Wife argues that Husband affirmatively placed his mental health at issue, and thus waived the psychologist-client privilege, by seeking an award of sole custody. Wife further argues that Husband placed his mental health at issue by demanding that she provide "strict legal proof thereof" in response to her allegations of physical and emotional abuse. On the contrary, Husband argues that merely denying Wife's allegations of mental instability and abuse, and seeking sole custody of their children, does not automatically waive the psychologist-patient privilege.

We agree with Husband that seeking custody does not, by itself, amount to an automatic waiver of the psychologist-client privilege. We also agree with Husband that denying allegations of mental instability and abuse, and demanding proof of the same, does not automatically waive the privilege protection afforded to his psychological records. If this were the law in Tennessee, there would be no psychologist-client privilege in child custody cases; a party seeking privileged mental health records could obtain them simply by alleging the mental instability of his or her adversary. After thoroughly reviewing the record, however, it appears that the trial court ordered disclosure of Husband's psychological records without considering the applicable legal principles governing its discretion.

At the hearing on March 25, 2011, when ruling on Wife's Motion for Release of Psychological Records, the trial court concluded:

-8-

I appreciate the spirit in which this cause is expressed, but I cannot ignore, particularly the allegations - the fact of the allegations that are behind, for example, the Petition for the Order of Protection. Now, it's an incident that occurred at church and other incidents where the knife apparently - allegedly was involved, but for the sake of our discussion, if this gentleman had been prone to - I don't know how to say it any other way than this - but prone to lose it in church, of all places, I suppose the possibility exists that he may be wrestling with some demons not related even to his relationship with his wife and family, but, yet, still would impact upon his own mental health status such that that would figure into determination that would be made in terms of the parenting relationship - ongoing parenting relationship with these children.

. . . .

. . . . I must say to everyone here that one of my greatest fears is going home some day and finding some family that has been through these courtroom doors be the late breaking news story that evening and then wonder to myself, "Is there something I could have done to have prevented that from happening," or worse yet, "Is it something that I did that caused it to happen?" So I do not take any of this lightly.

. . . .

. . . . Where does that leave us, and how do we know that the fear that I have would be ill founded in this case without access to his complete psychological history? That's a rhetorical question and also requires a response.

. . . .

Having now explored all of this in great detail, I'm more and more convinced that ultimately this Court will be called upon to make a decision or decisions that will manifestly take into account the overall state of this gentleman's mental health, and I do not believe that can be done without full evidence. The motion to require production of these records is well taken, I now believe, and will be granted subject to preparation of an appropriate protective order . . . .

Despite Husband's arguments, the trial court provided no reasoning as to why Husband's psychological records were not protected from discovery by the psychologist-client privilege, or the extent to which Husband possibly waived the privilege. "[D]iscretionary choices are not left to a court's inclination, but to its judgment; and its judgment is to be guided by sound

legal principles." *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007) (quoting Martha S. Davis, *Standards of Review: Judicial Review of Discretionary Decisionmaking*, 2 J. App. Prac. & Process 47, 58 (2000) (citations and internal quotation marks omitted)). An abuse of discretion may be found "when the trial court has gone outside the framework of legal standards or statutory limitations, or when it fails to properly consider the factors on that issue given by the higher courts to guide the discretionary determination." *Id.* (quoting 2 J. App. Prac. & Process at 59) (internal quotation marks omitted)). Although the best interests of the children remain the focus of the trial court's concern when making custody determinations, the importance of the confidential relationship between a psychologist and client must not go unnoticed. Therefore, we conclude that the trial court erred to the extent that it ordered disclosure of Husband's psychological records to Wife without properly considering the application of the psychologist-client privilege or whether Husband waived the privilege. We are mindful, however, of the concerns expressed by the trial court for the best interests of the children in light of the comparative fitness of the parents. Accordingly, on remand Husband's psychological records shall be disclosed to the trial court for an *in camera* review for the purpose of conducting the comparative fitness analysis. Following this determination, the trial court shall enter an appropriate order protecting Husband's privileged psychological records.

## IV. Conclusion

For the forgoing reasons, we vacate the judgment of the trial court and remand for further proceedings consistent with this Opinion. Costs of this appeal are taxed to the Appellee, Hannah Ann Culbertson, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE

-10-