IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 1, 2016 Session

## OUTPOST SOLAR, LLC, ET AL. v. HENRY, HENRY & UNDERWOOD, P. C., ET AL.

**Appeal from the Circuit Court for Giles County**
**No. CC11515        James G. Martin, III, Judge**

_____

**No. M2016-00297-COA-R9-CV**
_____

This interlocutory appeal arises out of an action in which two companies brought suit against their former attorney for legal malpractice. The attorney moved for summary judgment as to one client's claim, contending that the claim was barred by the statute of limitations; the client responded that it learned of its cause of action within one year of the assertion of the claim. The attorney then sought through discovery to have the former client produce communications from the client's new counsel; the client declined to produce the communications, taking the position that they were protected by the attorney-client privilege. The attorney moved the trial court to compel the client to produce the communications, and the court granted the motion, holding that the client impliedly waived attorney-client privilege in asserting that the client discovered the cause of action within the year preceding the assertion of the claim. Discerning no error, we affirm the trial court's holding.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Jay S. Bowen and Will Parsons, Nashville, Tennessee, for the appellant, BNL Technical Services, LLC.

Winston S. Evans, Nashville, Tennessee, for the appellees; Henry, Henry & Underwood, P.C., and Robert Henry.

## OPINION

This is an interlocutory appeal in an action for legal malpractice brought by Outpost Solar, LLC ("Outpost") and BNL Technical Services, LLC ("BNL") against

Robert C. Henry ("Mr. Henry") and Henry, Henry, and Underwood, P.C., his law firm. BNL appeals an order granting Mr. Henry's motion to compel BNL to produce copies of correspondence between BNL and its counsel that BNL claims is protected by the attorney-client privilege. Mr. Henry sought production of the correspondence in connection with his defense that BNL's claim was barred by the one year statute of limitations applicable to legal malpractice claims at Tennessee Code Annotated section 28-3-104. The trial court ordered the production of the documents after holding that BNL impliedly waived the privilege when it asserted, in response to Mr. Henry's statute of limitations defense, that it discovered the cause of action within the limitations period. BNL contends that the court erred because BNL did not use the information to support its legal malpractice claim.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY[1]

BNL is a contract engineering support and renewable energy services firm that does business in Tennessee; Wilson P. Stevenson, III ("Mr. Stevenson"), is the majority owner and president. BNL and a company known as Richland, LLC ("Richland") formed Outpost, a joint venture, to design and manufacture solar energy systems. Mr. Henry prepared the articles of organization, operating agreement, and other documents for Outpost, and the articles were filed on January 14, 2009, with Mr. Henry serving as Outpost's registered agent until September 13, 2011. In August 2011, Mr. Henry prepared the Bill of Sale when BNL purchased Richland's 50 percent interest in Outpost; the bill of sale included a provision that Mr. Henry, as Richland's attorney, had drafted the document "at both parties' request," and that they "have been advised a conflict may exist between them and have requested that this instrument be prepared jointly for the Company's attorney and consent thereto and waive any conflict of interest."

Prior to BNL's purchase of Richland's interest, Outpost and Mr. Stevenson had engaged in discussions with the Industrial Development Board of the City of Pulaski and Giles County, Tennessee ("the Board") about leasing space in the industrial park. In due course, Mr. Stevenson and Mr. Speer, the Executive Director of the Board, negotiated the terms of a lease of property in the park for a total term of twenty years.[2] When Mr. Stevenson and Mr. Dan Speer reached the agreement, Mr. Henry, who also represented the Board, prepared the lease agreement, which Outpost and the Board executed on September 6, 2011.[3]

---

[1] The salient facts in this history are taken from the Amended Complaint and Mr. Henry's Answer. There is no dispute in the facts presented pertinent to the issues in this appeal.

[2] In his Answer, Mr. Henry asserted that the term was five years, with three renewal options of five years each. In addition to a building located in the park, the lease included an option to lease 7.1 acres of land adjoining the building, although the pleadings are not clear as to when the option could be exercised.

[3] BNL alleged that Mr. Henry acted as counsel for both Outpost Solar and the Board in connection with

In December 2011, a dispute arose between Outpost and Richland with respect to some equipment manufactured by Richland, and on January 23, 2012, Mr. Henry wrote Mr. Stevenson, advising him that Mr. Henry's firm "no longer represent [Outpost] and our attorney-client relationship has terminated." In February 2012 the Board began discussions with Magneti Marelli, another tenant of the industrial park whose facility adjoined the property upon which Outpost held an option to lease, regarding Marelli's proposed expansion; as a result of these discussions, the Board requested Outpost on several occasions to release its option. The Board and Outpost were not able to agree on the terms of a release.

On October 11, 2012, Mr. Henry sent Mr. Stevenson a letter on behalf of the Board, *inter alia*, advising him that Outpost was in default of the lease in several respects and that, if the items "[were] not addressed during the cure period, the Board 'may' exercise its option to terminate the Lease." On November 9, Outpost, through its new counsel, gave the Board notice that Outpost was exercising its option to lease the additional acreage, and on November 12, the Board executed a temporary easement in favor of Magneti Marelli. In May 2013, Outpost vacated the premises.

With specific reference to the claims of BNL, which give rise to the instant appeal, the Amended Complaint also alleged that throughout 2010 and 2011, PV Training & Research, LLC ("PVTRC"), a company owned by Mr. Stevenson's mother which was planning to open a solar farm in Pulaski, entered into agreements with the Board to purchase three parcels of land which it planned to assign to Silicon Ranch, LLC ("Silicon Ranch") to develop the solar farm; that, in exchange, Silicon Ranch was going to reimburse $225,000 in site preparation costs incurred by BNL and award BNL contracts related to work on the Pulaski solar farm and other Silicon Ranch solar farms; and that the Board sold the property directly to Silicon Ranch in breach of the agreement to sell to PVTRC; that Mr. Henry, in violation of his duties as counsel to BNL, "facilitated [the Board's] breach of the agreements to sell real estate to PVTRC" and failed to inform BNL of the Board's action; and that BNL "did not discover Henry's integral role in this transaction and his violation of duties to BNL until late 2013 and/or early 2014 when these facts were revealed in the discovery process in a separate lawsuit."[4]

On October 11, 2013, Outpost and Mr. Stevenson filed the instant suit against Mr. Henry and his law firm, alleging that Mr. Henry had a conflict of interest and committed legal malpractice in representing Outpost and Mr. Stevenson while also representing the Board. On December 17, 2013, Mr. Henry served a subpoena *duces tecum* on Scott Williams ("Mr. Williams"), the attorney who had begun representing Outpost and BNL,

preparing the lease and that the provision which granted Outpost an option to lease an additional 7.1 acres was unenforceable; Mr. Henry denied the allegations, asserting that he represented the Board and was under no obligation to give Outpost any advice regarding the lease.

[4] Mr. Henry denied these allegations.

seeking all correspondence, e-mails, and other written communications between Mr. Williams, Mr. Stevenson, Outpost, and BNL. Outpost filed a motion to quash the subpoena on January 13, 2014, arguing that the documents were protected by attorney-client privilege and/or the work product doctrine; on July 18, the court entered an order, *inter alia*, requiring Outpost to provide a log within 60 days of the documents not provided to Mr. Henry for which a claim of privilege was made.

On July 24, 2014, Outpost amended the complaint, dropping Mr. Stevenson as a plaintiff, adding BNL as a plaintiff, and asserting additional causes of action for breach of fiduciary duty, aiding and abetting constructive eviction, and fraudulent concealment. BNL's legal malpractice claim, which arises from Mr. Henry's role in the Board's sale of the solar farm property directly to Silicon Ranch, asserts that Mr. Henry "committed legal malpractice through his representation of [the Board] that was directly adverse to his client, BNL." Mr. Henry answered on November 19, denying the gravamen of the complaint and asserting, *inter alia*, that BNL's claim was barred by the one-year statute of limitations at Tennessee Code Annotated section 28-3-104(a)(2).[5]

On December 3, 2014, Mr. Henry moved for summary judgment, contending that Mr. Stevenson had actual or constructive knowledge of the facts giving rise to BNL's cause of action more than a year before BNL joined in the instant suit, therefore barring BNL's malpractice claim. In a portion of his response to the motion for summary judgment, Mr. Stevenson reasserted statements he made in a September 2014 declaration.[6] On December 10, Mr. Henry filed a motion asking the court to compel BNL to produce documents that had been subpoenaed from Mr. Williams, which BNL had withheld on the ground that the documents were protected from production by the attorney-client privilege.[7]

---

[5] 2014 Tennessee Laws Public Chapter 618 (S.B. 1506) recodified the one-year limitations period applicable to legal malpractice actions at Tennessee Code Annotated section 28-3-104(c)(1), effective July 1, 2014.

[6] In September 2014, Mr. Stevenson filed a declaration, apparently in response to Mr. Henry's November 2013 motion to dismiss for failure to state a claim, wherein Mr. Stevenson asserted that he first learned the specifics and scope of Mr. Henry's involvement in the Board's sale of the solar farm property directly to Silicon Ranch, contrary to the interest of BNL, in January 2014, during his review of documents produced by the Board in the course of discovery in related litigation. In the declaration, Mr. Stevenson also asserted that Mr. Henry, "deprived BNL of its expected benefits by devising and implementing a scheme for [the Board] to cut PVTRC and BNL out of the deal and sell the solar farm properties directly to Silicon Ranch."

[7] Outpost and BNL had previously produced documents in response to the subpoena served upon Mr. Williams and served a privilege log that identified 151 documents requested. The privileged documents were communications between Mr. Stevenson, in his capacity as BNL president, and his attorneys.

4

On March 27, 2015, the court appointed senior judge Ben Cantrell as Special Master, with instructions to determine whether any of the 151 documents which BNL had withheld from production as privileged were relevant to Mr. Henry's statute of limitations defense and to advise the court in that regard. On May 19, 2015, BNL submitted a total of 172 documents to the Special Master, and on August 10 Judge Cantrell reported that eight of the documents contained information relevant to the defense.[8] The court thereafter ordered BNL to produce the eight privileged documents, holding that that "[the] plaintiffs put their privileged information at issue by pleading the discovery rule."

BNL moved for permission to file an interlocutory appeal pursuant to Tennessee Rule of Appellate Procedure 9, which the trial court granted; this court, likewise granted permission to appeal. The question presented for our review is whether the trial court erred in holding that BNL impliedly waived the attorney-client privilege when it invoked the discovery rule in response to Mr. Henry's assertion of the statute of limitations defense and ordering production of the documents.

## II. DISCUSSION

Decisions regarding pre-trial discovery are inherently discretionary; therefore, the standard of review for such decisions is abuse of discretion. *See Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (citations omitted). An abuse of discretion occurs if a trial court causes an injustice to a party by "(1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *Id*. (citations omitted) "While the abuse of discretion standard limits the scope of our review of discretionary decisions, it does not immunize these decisions completely from appellate review." *Boyd v. Comdata Network, Inc*., 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002) (citing *Duncan v. Duncan*, 789 S.W.2d 557, 561 (Tenn. Ct. App. 1990)).[9] "When called upon to review a discretionary

---

[8] By agreement of the parties, the Master also reviewed additional documents identified after entry of the Order of Reference; the Master determined that none of the additional documents were relevant to the issue presented.

[9] Our Supreme Court has described the abuse of discretion standard of review:

> The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009); *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000). It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives. *Overstreet v. Shoney's, Inc*., 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999). Thus, it does not permit reviewing courts to second-guess the court below, *White v. Vanderbilt Univ*., 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999), or to substitute their discretion for the lower court's, *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *Myint v. Allstate Ins. Co*.,

decision, we will review the trial court's underlying factual findings using the preponderance of the evidence standard in Tenn. R. App. P. 13(d). However, we will review the trial court's purely legal determinations *de novo* without a presumption of correctness." *Boyd*, 88 S.W. 3d at 212 (citing *Brown v. Birman Managed Care, Inc.,* 42 S.W.3d 62, 66 (Tenn. 2001); *Burlew v. Burlew,* 40 S.W.3d 465, 470 (Tenn. 2001); *Grand Jury Proceedings v. United States,* 156 F.3d 1038, 1042 n.1 (10th Cir. 1998)). The threshold inquiry in this case is whether the court utilized the proper test to determine whether the privilege was waived and, if so, whether BNL's actions met the test.

## A. **Appropriate Test**

In Tennessee, a plaintiff must file a legal malpractice claim within one year of the day on which the injury giving rise to the claim occurred. *See* Tenn. Code. Ann. § 28-3-104(c). In *Kohl v. Dearborn & Ewing* our Supreme Court discussed a two-prong test, denominated the "discovery rule," for determining when the statute of limitations period for legal malpractice claims begins to run, 977 S.W.2d 528, 532 (Tenn. 1998). Under the discovery rule, a plaintiff must (1) suffer a legally cognizable or actual injury and (2) know, or in the exercise of reasonable diligence should have known, that the injury was caused by the defendant's negligent or wrongful conduct. *Id*. Evidence of the plaintiff's actual or constructive knowledge of the injury can establish the second element. *Kohl*, 977 S.W.2d at 532 (citing *Carvell v. Bottoms*, 900 S.W.2d 23, 29 (Tenn. 1995)). A plaintiff has constructive knowledge of an injury when he or she is "aware of facts sufficient to put a reasonable person on notice that he [or she] has suffered an injury as a result of wrongful conduct." *Carvell*, 900 S.W.2d at 29 (quoting *Roe v. Jefferson,* 875 S.W.2d 653, 657 (Tenn. 1994)). The limitations period begins to run when the plaintiff has actual or constructive knowledge of the injury. *See Kohl* 977 S.W.2d at 532 (Tenn. 1998).

---

970 S.W.2d 920, 927 (Tenn. 1998). The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002).

*Beecher,* 312 S.W.3d at 524. *Beecher* directs appellate courts to review a lower court's discretionary decision to determine:

> (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions.

*Id*. (citing *Flautt & Mann v. Council of Memphis,* 285 S.W.3d 856, 872–73 (Tenn. Ct. App. 2008) (quoting *BIF, a Div. of Gen. Signal Controls, Inc. v. Service Constr. Co.,* No. 87–136–II, 1988 WL 72409, at *3 (Tenn. Ct. App. July 13, 1988)).

In the case at bar, after analyzing a range of Tennessee cases discussing the limits of the attorney-client privilege, the trial court addressed the circumstances under which the privilege can be impliedly waived and concluded that Plaintiffs put the privilege at issue when they asserted the discovery rule in responding to Mr. Henry's motion for summary judgment. In ordering that the documents be produced, the court held:

> This Court concludes that Plaintiffs' assertion of the discovery rule ultimately led to Plaintiffs' assertion that that the relevant documents are protected by attorney-client privilege. Although statute of limitations is an affirmative defense under Tennessee law, and Defendants bear the burden of proof, it was Plaintiffs' assertion of the discovery rule in response that ultimately put Plaintiffs' knowledge, and thereby Plaintiffs' privileged communications, at issue in the current dispute.

In so ruling, the court adopted the holding of *Bryan v. State* that a party asserting the privilege "has impliedly waived it through the party's own affirmative conduct" where three conditions exist. 848 S.W.2d 72, 81 (Tenn. Crim. App. 1992) (citing *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975)). Those three conditions are:

> (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party;
> (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and
> (3) application of the privilege would have denied the opposing party access to information vital to his defense.

*Id.*

BNL contends that the court erred when it applied the standard set forth in *Bryan* in ordering production of the documents; it argues that a client impliedly waives the privilege only if the client uses privileged information to support a claim or defense, which is the standard set forth in *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3rd Cir. 1994). We respectfully disagree; BNL's argument is contrary to established case law in this state.

*Bryan* was a post-conviction proceeding in which the petitioner sought relief from three convictions resulting from his pleas of guilty, asserting that he did not knowingly and voluntarily enter the pleas. *Bryan*, 848 S.W.2d at 73. At the hearing on his petition, the State called the petitioner's trial attorney to testify; however, both the attorney and the prisoner asserted the attorney-client privilege, and the trial court honored the privilege, but held, *inter alia*, that the pleas were "voluntarily and knowingly entered under the totality of the circumstances." *Id*. at 74. On appeal, the Court of Criminal Appeals reversed the trial court, holding that, while the record supported the trial court's

7

determination that the pleas were voluntarily entered, the record did not support the determination that they were knowingly and understandingly made. *Id.* at 78. Rather than vacate the convictions, however, the Court of Criminal Appeals remanded the case for a new hearing on the petition, holding that, upon a proper showing by the State that the information possessed by the trial attorney was vital to its defense in the post-conviction action, "an implied waiver of the privilege would be appropriate." *Id*. at 81. In so doing, the Court held that "waiver occurs any time a party testifies about purported communications between him or herself and the attorney, but seeks to prevent the opposing party's use of the attorney as a witness." *Id*. at 80 (citing *Cooper v. United States*, 5 F.2d 824 (6th Cir. 1925)).

This Court had occasion to discuss waiver of the attorney-client privilege in *Culbertson v. Culbertson* [*Culbertson I*], 393 S.W.3d 678 (Tenn. Ct. App. 2012) and *Culbertson v. Culbertson* [*Culbertson II*], 455 S.W.3d 107 (Tenn. Ct. App. 2014), cases in which the psychologist-client privilege was at issue.[10] In *Culbertson I*, the Wife in a divorce proceeding issued subpoenas *duces tecum,* and three notices to take depositions *duces tecum,* to three of Husband's psychologists. *Culbertson I,* 393 S.W.3d at 681. Husband moved to quash, arguing that the information was not discoverable because it was privileged pursuant to Tennessee Code Annotated section 63-11-213.[11] *Id.* at 681-82. Wife filed a competing motion, contending that Husband waived the privilege. *Id.* at 682. In due course, the trial court denied Husband's motion and granted Wife's; we granted Husband's application for appeal under Rule 10 of the Tennessee Rules of Appellate Procedure. *Id.*

We first noted that the statute which created the psychologist-client privilege, Tennessee Code Annotated section 63-11-213, put the privilege on par with the attorney-

---

[10] *Culbertson II* set forth the following standard of review of trial court decisions involving waiver of the attorney-client privilege:

> Generally, the issue of whether a party has waived a privilege is a mixed question of law and fact, subject to *de novo* review. In applying this standard, we first determine whether the facts on which the claimed waiver is based are supported by a preponderance of the evidence in the record. We then determine, as a question of law, whether the facts as supported by a preponderance of the evidence constitute a waiver of the privilege.

*Culbertson II*, 455 S.W.3d at 125.

[11] Tennessee Code Annotated section 63-11-213 states:

> For the purpose of this chapter, the confidential relations and communications between licensed psychologist or psychological examiner or senior psychological examiner or certified psychological assistant and client are placed upon the same basis as those provided by law between attorney and client; and nothing in this chapter shall be construed to require any such privileged communication to be disclosed.

client privilege; we then reviewed the jurisprudence relative to that privilege, expressly noting the holding in *Bryan*:

> The attorney-client privilege is the oldest privilege recognized in Tennessee both at common law and by statute. *Boyd v. Comdata Network, Inc.,* 88 S.W.3d 203, 212 (Tenn. Ct. App. 2002) (citations omitted). The privilege "encourages full and frank communication between attorney and client by sheltering these communications from disclosure." *State ex rel. Flowers* [*v. Tenn. Trucking Ass'n Self Ins. Group Trust,*] 209 S.W.3d [602,] at 615-16 [(Tenn. Ct. App. 2006)] (citing Tenn. Code Ann. § 23-3-105; *Federal Ins. Co. v. Arthur Anderson & Co.,* 816 S.W.2d 328, 330 (Tenn. 1991)). The attorney-client privilege, however, is not absolute, and does not encompass all communications between an attorney and a client. *Id.* at 616 (citing *Bryan v. State,* 848 S.W.2d 72, 80 (Tenn. Crim. App. 1992)). "[W]hether the attorney-client privilege applies to any particular communication is necessarily question, topic and case specific." *Bryan,* 848 S.W.2d at 80. To invoke the protection of the attorney-client privilege, the burden is on the client to "establish the communications were made pursuant to the attorney-client relationship and with the intention that the communications remain confidential." *State ex rel. Flowers,* 209 S.W.3d at 616 (citing *Bryan,* 848 S.W.2d at 80).

> "The [attorney-client] privilege is designed to protect the client and because it belongs to the client, may be waived by him." *Smith Cnty. Educ. Assoc. v. Anderson,* 676 S.W.2d 328, 333 (Tenn. 1984). "If a client divulges the communications he seeks to protect, then he has waived the attorney-client privilege with respect to the reported communications and the attorney may testify to its contents." *State v. Buford,* 216 S.W.3d 323, 326 (Tenn. 2007) (citing *Bryan,* 848 S.W.2d at 80 (citing *Cooper v. United States,* 5 F.2d 824 (6th Cir. 1925))). Waiver may also occur when the communications take place in the presence of a third party. *State ex rel. Flowers,* 209 S.W.3d at 616 (citing *Boyd,* 88 S.W.3d at 218–19 (citation omitted)). Moreover, as explained by the Tennessee Court of Criminal Appeals in *Bryan:*

>> [A] party asserting the attorney-client privilege has impliedly waived it through the party's own affirmative conduct where three conditions exist:
>> (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party;
>> (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and

(3) application of the privilege would have denied the opposing party access to information vital to his [or her] defense.

*Bryan,* 848 S.W.2d at 81 (citing *Hearn v. Rhay,* 68 F.R.D. 574, 581 (E.D.Wash.1975)).

*Culbertson I*, 393 S.W.3d at 684–85. Concluding that the trial court had ordered production of the records "without properly considering the application of the psychologist-client privilege or whether Husband waived the privilege," we vacated the judgment and remanded the case for the trial court to perform an *in camera* review for purposes of conducting the comparative fitness analysis. *Id*. at 687. Husband unsuccessfully sought Supreme Court review of our decision.

The case proceeded while Husband's application for review was pending before the Supreme Court, and Wife filed a motion *in limine* in which she sought to exclude from the divorce trial all evidence of the Husband's psychological condition if he persisted in claiming the psychologist-client privilege as to production of his psychological records. *Culbertson II*, 455 S.W.3d at 122. The trial court granted the motion in part, holding that the Husband sought to introduce proof of his psychological treatment, including the declaration that he has been rehabilitated, and ordering that his psychological records be produced. *Id*. at 124. Husband again filed a Rule 10 application to appeal, which we granted.[12] After discussing the "two widely divergent approaches to the issue of waiver of the psychologist-client privilege," we again applied "the more protective view" adopted in *Culbertson I*. *Id*. at 134, 135. We ultimately held that the Husband had not waived the privilege as to certain of the records and that he had waived the privilege as to others; we remanded the case for the trial court to make factual determinations as to the extent of the waiver. *Id*. at 159.

---

[12] Pertinent to this case, the issue we considered in *Culbertson II* was stated:

In the order on appeal, the trial court held that Father generally waived the psychologist-client privilege as to any and all of his mental health records. The trial court based the waiver holding on the fact that Father "sought through his own testimony to introduce proof of his psychological treatment, including declaring that he has been treated and seeking to use this evidence as proof that he has been rehabilitated," and also that Father "sought to support his testimony with that of [the psychologist who performed the Rule 35 evaluation] and other experts, whom [Father] has allowed to speak with his psychologists and allowed to review [Father's] psychological records in forming their opinions." We consider whether the trial court erred in concluding that Father generally waived the psychologist-client privilege under these circumstances.

455 S.W.3d at 130.

10

BNL argues that adopting the *Bryan* standard "would have significant negative effects," i.e., that a client would be discouraged from seeking legal advice about a potential claim and from engaging in full and frank communications with his counsel regarding those claims; that a litigant would be forced to choose between asserting a valid but facially time-barred claim and waiving the attorney-client privilege; that litigants would be forced to litigate motions to compel, thereby increasing litigation costs and straining court resources; and that a plaintiff's attorney "who files a lawsuit asserting the discovery rule [would] be forced to disclose any 'relevant' communications with his client regarding the issue. . . then becom[ing] a fact witness with respect to when his client discovered (or should have discovered) his cause of action."[13] We do not believe that adopting such a standard to determine whether, in a given circumstance, the privilege has been waived will produce the consequences forecast by BNL. To the contrary, the record before us demonstrates the standard can be implemented in a logical and orderly manner, respecting the privilege itself, and utilizing the applicable rules governing discovery and the role of the court in supervising contested discovery matters.[14] The process resulted in a threshold determination that some of the documents were relevant to the application of a specific law, i.e., the statute of limitations; thus it was an appropriate means of addressing the competing interests the court identified in Bryan and securing fairness in the judicial process. *See Bryan*, 848 S.W.2d at 81.

Consistent with the foregoing, we affirm the use of the standard set forth in *Bryan* to determine the issue of waiver and proceed to review the determination that BNL waived the attorney-client privilege.

## B. Application of the Test

Relative to the three conditions for determining whether BNL impliedly waived the attorney-client privilege, the trial court held:

---

[13] BNL also contends that adopting the standard would be "contrary to recent Tennessee law," specifically *Culbertson I* and *Culbertson II*. We respectfully disagree with BNL's reading of those cases, pertinent portions of which we have quoted and discussed above.

[14] The trial court recognized that "the privilege associated with attorney-client communications and/or work product materials and vigorously protecting such information has been deemed a vital and important part of American jurisprudence," and sought to weigh that interest against "the injustice which could result from allowing a party to communicate information to an attorney which would demonstrate knowledge that would bar a party's claim and allow the party to then refuse to disclose that information based upon the attorney-client privilege." The court then appointed Judge Cantrell to review the documents as to which the privilege was claimed and report "whether any or all of the documents have any relevance to the issue of whether plaintiff BNL, through its agent, Wilson Stevenson, III, knew, or in the exercise of reasonable diligence, should have known, of the claims against the defendants prior to July 24, 2013." Judge Cantrell reported that eight documents were relevant to the issue. The court then entered the order under appeal, discussing the applicable law and ordering production of the documents.

11

This Court concludes Plaintiffs' assertion of the discovery rule ultimately led to Plaintiffs' assertion that the relevant documents are protected by attorney-client privilege. Although statute of limitations is an affirmative defense under Tennessee law, and Defendants bear the burden of proof, it was Plaintiffs' assertion of the discovery rule in response that ultimately put Plaintiffs' knowledge, and thereby Plaintiffs' privileged communications, at issue in the current dispute.

The Court concludes that Plaintiffs put their privileged information at issue by pleading the discovery rule. . . . by pleading ignorance of its cause of action against Defendants, Plaintiffs have made "what Plaintiffs knew and when Plaintiffs knew it" the dispositive issue of this case.

In addition, Defendants have no other way to obtain information vital to its defense. Defendants assert Plaintiffs claim was time-barred, because Plaintiffs complaint was filed more than one year after Plaintiffs became aware of Defendants behavior giving rise to the cause of action. Plaintiffs' assertion of the discovery rule—Plaintiffs did not know and could not have reasonably known its cause of action against Defendants—makes Plaintiffs' actual or constructive knowledge vital to Defendants' argument that Plaintiffs did know of its claim more than a year in advance of Plaintiffs' filing.

Related to the first condition of waiver articulated in *Bryan*, we agree with the trial court that BNL's assertion of the discovery rule in response to Mr. Henry's statute of limitations defense led BNL to argue, in response to the motion to compel, that the documents were privileged. This assertion made the documents potentially relevant to the defense, and Judge Cantrell's review of the documents eliminated those which were not relevant; thus, the eight documents are relevant to Mr. Henry's statute of limitations defense, and the second condition is satisfied.[15]

As to the third condition, BNL contends that Mr. Henry "made no showing that the privileged information sought was 'vital' to his case or that he had exhausted other, less intrusive means of discovering the information." BNL argues that statements made by Mr. Henry's counsel at the hearing on the motion and that the fact that Mr. Henry has not pursued the "less intrusive means" of taking Mr. Stevenson's deposition are proof that the information is not vital. These arguments are without merit. We have reviewed the statements made by Mr. Henry's counsel, which BNL takes out of context, as they

---

[15] *See* Tenn. R. Civ. P. 26.02(1) permitting discovery of "any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party…."

were made with respect to the consequences of the court dismissing the case as a discovery sanction if the documents are not produced; we fail to see how the statements support even an inference that the documents are not vital to Mr. Henry's defense.[16] With respect to BNL's other argument that Mr. Henry has made no showing that sufficient evidence is unavailable outside of BNL's attorney-client communications or that they are likely to contain relevant evidence that could not be contained elsewhere, we conclude the record does not show that BNL has sought relief under Rule 26.03 of the Tennessee Rules of Civil Procedure.[17] We do not venture to postulate, particularly in light of the voluminous record in this case, what might be a "least intrusive means" of discovery.

Upon our review, we do not discern any error in the portion of trial court's holding that "Plaintiffs' actual or constructive knowledge [is] vital to Defendants' argument that Plaintiffs did know of its claim more than a year in advance of Plaintiffs' filing."

## III. CONCLUSION

For the foregoing reasons, the judgment of the trial court requiring BNL to produce the documents at issue is affirmed.

RICHARD H. DINKINS, JUDGE

---

[16] For instance, BNL's brief quotes one of counsel's statements as "we're still going to win the summary judgment." In context, however, counsel is responding to a question posed by the court relative the possible dismissal of the case as a discovery sanction; the full response states "…even if you send it up, they win, and the order is reversed, we come back down, that's not going to end the case. We will probably – or cause reversal, because I think we're still going to win the summary judgment."

[17] The general provisions regarding discovery, including the range of discovery methods, scope and limits, sequence and timing, etc., are contained in Rule 26 of the Tennessee Rules of Civil Procedure; the court's role in supervising discovery is contained at Rule 26.03.