IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 15, 2020

## DANA MARLENE PAGLIARA v. TIMOTHY J. PAGLIARA

**Appeal from the Chancery Court for Williamson County**
**No. 45806     Deanna B. Johnson, Judge**

_____

### No. M2019-01397-COA-R9-CV

_____

This interlocutory appeal arises from a pending divorce action. During discovery, the husband sought certain communications between the wife and her attorneys. During some of these meetings between the wife and her attorneys, a third party was present during discussions of whether the wife should report conduct by the husband to law enforcement. The wife could not identify which of the meetings the third party had been present and which she had not. Because the wife did not meet her burden of proof in demonstrating that attorney-client privilege applied to the communications, we affirm the judgment of the Trial Court.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which ARNOLD B. GOLDIN and KENNY W. ARMSTRONG, JJ., joined.

James L. Weatherly, Jr., Nashville, Tennessee, for the appellant, Dana Marlene Pagliara.

Eugene N. Bulso, Jr., and Paul J. Krog, Nashville, Tennessee, for the appellee, Timothy J. Pagliara.

# OPINION

## Background

In December 2016, Dana M. Pagliara ("Wife") filed a complaint for divorce against Timothy J. Pagliara ("Husband").[1] At that time, Wife was represented by an attorney, Marlene Moses. While the divorce action was pending, Wife consulted with her attorney, Ms. Moses, in the presence of Wife's friend, Adela Ferrell, concerning, in part, whether Wife should report to law enforcement certain actions by Husband. Ms. Moses correctly had informed Wife that their communications would not be protected by attorney-client privilege with Ms. Ferrell present, but Wife insisted Ms. Ferrell remain in the room. Husband's countercomplaint alleged that upon Wife's request for legal advice as to whether she should report Husband's actions to law enforcement, Ms. Moses responded to Wife that reporting his conduct was the only way for Wife to gain an advantage in the divorce proceeding. The Trial Court found that Ms. Ferrell was present at more than one meeting between Wife and Ms. Moses but that it was unclear how many meetings she attended. According to the Trial Court, "neither Wife nor Ms. Ferrell can identify which meetings Ms. Ferrell attended."

Ms. Moses then referred Wife to her son-in-law, Ben Russ, an attorney practicing criminal law. Ms. Ferrell drove Wife to her meeting with Mr. Russ and was present during this meeting. Mr. Russ also informed Wife that their conversations would not be privileged with Ms. Ferrell present in the meeting, but Wife insisted that Ms. Ferrell be present. Ms. Ferrell, therefore, was present for this meeting with Mr. Russ wherein they discussed reporting Husband's actions to law enforcement.

Wife subsequently reported Husband's actions to the Franklin Police Department. As part of the divorce action, Husband brought claims against Wife for intentional infliction of emotional distress and negligent infliction of emotional distress. According to Husband, Wife had pursued criminal charges against him to obtain leverage in the divorce action resulting in "serious mental injury" to Husband. Wife filed a motion to dismiss Husband's claims, but the Trial Court denied the motion determining that the claims should be decided by a jury.

As relevant to the intentional infliction of emotional distress and negligent infliction of emotional distress claims, Husband requested discovery of Wife's communications with Ms. Moses. Husband filed a motion to compel discovery alleging, in part, that Wife did not produce communications between Wife and her attorneys. Wife claimed that the communications sought by Husband were protected by attorney-client privilege. Husband also had served upon the law firm of Wife's divorce attorney, Ms.

---

[1] Wife has accepted the Trial Court's findings of fact for purposes of this appeal.

Moses, a subpoena duces tecum, requesting records of Wife's communications with Ms. Moses concerning reporting Husband's conduct to the police. The law firm objected to the subpoena. In June 2018, Husband filed a motion to compel against the law firm.

A hearing was held in May 2019, wherein the Trial Court informed the parties of its ruling concerning the issue of whether attorney-client privilege applied to protect the conversations between Wife and Ms. Moses and Wife and Mr. Russ. The Trial Court had conducted a hearing on Husband's motion to compel on an earlier date but revisited the motion in the May 2019 hearing. The Trial Court entered an order that same day finding as follows concerning the application of attorney-client privilege:

> "To be protected by the attorney-client privilege, the communications must involve the subject matter of the representation." *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203 (Tenn. Ct. App. 2002); *see also, Jackson v. State*, 293 S.W. 539 (Tenn. 1926) (where client consulted attorney about a legal matter and made remarks about another matter, separate and distinct from such legal matter, those remarks were not privileged) and *State v. Buford*, 216 S.W.3d 323 (Tenn. 2007) (if a client divulges communication he seeks to protect, then he has waived the attorney-client privilege with regards to the reported communications).
>
> Based on these cases, the Court finds that Wife's communications with Ms. Moses about bringing criminal charges against Husband are not privileged. Wife had retained Ms. Moses to represent her in this divorce action, not to pursue criminal charges against Husband. Indeed, Ms. Moses referred Wife to a criminal defense attorney, Mr. Russ. Wife was meeting with Ms. Moses to discuss the divorce. Wife's pursuit of criminal charges against Husband was a "separate and distinct legal matter."
>
> Even if Wife's communications with Ms. Moses about reporting Husband to the police were privileged, the privilege was waived by Ms. Ferrell's presence in the meetings. Wife has conceded that any communications made between Wife and either of the attorneys with Ms. Ferrell present are not protected by the attorney-client privilege. Husband asks the Court to extend this waiver to all communications between Wife and her attorneys about that subject matter, whether or not Ms. Ferrell was present. In other words, according to Husband, Ms. Ferrell's presence during one or more of the meetings between Wife and Ms. Moses and Wife and Mr. Russ completely obliterates the attorney-client privilege for every time Wife and either of her attorneys discussed this subject matter of reporting Husband to the police.

First, the Court notes that the attorney-client privilege "assumes, of course, that the communications are made with the intention of confidentiality. The reason for the prohibition of disclosure ceases when the client does not appear to have been desirous of secrecy." *Hazlett v. Bryant*, 241 S.W.2d 121 (Tenn. 1951). By allowing Ms. Ferrell to be present during the meetings with her attorneys, Wife "does not appear to have been desirous of secrecy," especially considering the fact that both attorneys advised Wife that there would be no attorney-client privilege as long as Ms. Ferrell was there.

The Court has been unable to locate any Tennessee cases which address this "subject matter waiver doctrine;" however, the Illinois Supreme Court addressed this issue in *Center Partners, Ltd., et al. v. Growth Head GP, LLC*, 2012 IL 11307, (Ill. Supreme Ct. 2012). In *Center Partners*, the Illinois Supreme Court addressed what it called "subject matter waiver" and found "the client's offer of his own or the testimony as to a *specific communication* to the attorney is a waiver as to all other communications to the attorney on the same matter." *Id.* (citing *Wigmore on Evidence, 8 John Henry Wigmore, Evidence* § 2327, at 638). The *Center Partners* court further found that "a client's offer of his own or his 'attorney's testimony as to *a part of any communication* to the attorney is a waiver as to the whole of that communication, on the analogy of the principle of completeness.'" *Id.* "[A]ny voluntary disclosure by the client to a third party breaches the confidentiality of the attorney-client relationship and therefore waives the privilege, not only as to the specific communication disclosed but often as to all other communications relating to the same subject matter." *Id.*

Accordingly, the Court finds that, by having Ms. Ferrell in her meetings with Ms. Moses and Mr. Russ at the time she discussed the subject matter of reporting Husband to law enforcement, Wife has waived all attorney-client privilege as to communications between herself and Ms. Moses and herself and Mr. Russ about that same subject matter, even when those communications occurred outside Ms. Ferrell's presence.

Wife filed an application for an interlocutory appeal, which was granted by this Court by order dated September 3, 2019.

## Discussion

We granted this Rule 9 application to consider the sole issue of whether the Trial Court erred in holding that Wife waived her attorney-client privilege as to the entire

subject matter of bringing criminal charges against Husband and not limiting the waiver to those discussions held in front of the third party.

"The law favors making all relevant evidence available to the trier of fact." *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 212 (Tenn. Ct. App. 2002). However, certain privileges may limit discovery where applicable. So as to foster open communications between attorney and client, the law recognizes attorney-client privilege as one such privilege. *See* Tenn. Code Ann. § 23-3-105 (2009). Attorney-client privilege is not absolute, and "[t]he communications must involve the subject matter of the representation and must be made with the intention that they will be kept confidential." *Boyd*, 88 S.W.3d at 213 (footnotes omitted). Attorney-client privilege belongs to the client and may be waived by the client. *Smith County Educ. Ass'n v. Anderson*, 676 S.W.2d 328, 333 (Tenn. 1984). "'[W]hether the attorney-client privilege applies to any particular communication is necessarily question, topic and case specific.'" *Culbertson v. Culbertson*, 393 S.W.3d 678, 684 (Tenn. Ct. App. 2012) (quoting *Bryan v. State,* 848 S.W.2d 72, 80 (Tenn. Crim. App. 1992)).

Appellate courts review a trial court's decision regarding attorney-client privilege using the abuse of discretion standard. *Boyd*, 88 S.W.3d at 211. "An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011).

In this case, Wife consulted with her attorneys and included a third party, Ms. Ferrell, in at least some of those meetings where they discussed reporting Husband's conduct to law enforcement. It is well settled that communications between an attorney and his or her client that take place in the presence of a third party may result in a waiver of attorney-client privilege. *See Smith Cty. Educ. Ass'n*, 676 S.W.2d at 333; *Culbertson*, 393 S.W.3d at 684. Although a waiver does not occur if the third party is an agent of the client, *see Smith Cty. Educ. Ass'n*, 676 S.W.2d at 333, Wife does not assert that Ms. Ferrell was acting as her agent. In fact, Wife does not contest that she waived the privilege for those conversations that occurred while Ms. Ferrell was present. However, Wife argues that the conversations where Ms. Ferrell was not present are protected by attorney-client privilege.

The problem with Wife's argument is that she has not shown which meeting or meetings Ms. Ferrell was present and which she was not. As this Court has held:

"In most cases a privilege protects an individual, who alone possesses the facts needed to support the existence of the privilege. Accordingly, it is generally held that the party asserting a privilege has the

- 5 -

burden of proving that the privilege is applicable." NEIL P. COHEN, ET AL., TENNESSEE LAW OF EVIDENCE § 5.01[4](d) (5th ed. 2005); *see In re Columbia/HCA Healthcare Corp.,* 192 F.R.D. 575, 577 (M.D.Tenn. 2000); *Bryan* [*v. State*]*,* 848 S.W.2d [72,] 80 [(Tenn. Crim. App. 1992)] (holding the party asserting attorney-client privilege has the burden of establishing its existence). To successfully invoke the attorney-client privilege, the party asserting the privilege is obligated to establish the communications were made pursuant to the attorney-client relationship and with the intention that the communications remain confidential. *Bryan,* 848 S.W.2d at 80; *see also Smith County Educ. Ass'n v. Anderson,* 676 S.W.2d 328, 333 (Tenn. 1984).

*State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Grp. Tr.*, 209 S.W.3d 602, 616 (Tenn. Ct. App. 2006).

Initially, we note that in her appellate brief on appeal, Wife states that for purposes of this appeal, she "accepts the facts as stated by the Trial Court in its Memorandum and Opinion." In those findings of fact accepted and quoted by Wife in her brief, the Trial Court found that neither Wife nor Ms. Ferrell can identify which meetings Ms. Ferrell was present for and which she was not.

Because Wife was in the best place to have the knowledge necessary to prove the existence of attorney-client privilege, the burden of proof was with Wife to show that the communications between her and her lawyer were protected by attorney-client privilege. *See Culbertson*, 393 S.W.3d at 684; *State ex rel. Flowers.*, 209 S.W.3d at 616. Wife did not present evidence demonstrating that the attorney-client privilege applied to any specific one or more of the meetings with her attorneys and agreed with the Trial Court's finding that she could not identify which meetings Ms. Ferrell was present for. Our acceptance of Wife's position would mean that because neither Wife nor Ms. Ferrell could identify which meetings Ms. Ferrell was present, the attorney-client privilege would apply whether Ms. Ferrell was present or not. That is not the law in Tennessee. Wife has not met her burden of proof to establish that the attorney-client privilege protected these communications. As such, we affirm the Trial Court's ruling that the attorney-client privilege does not protect these communications between Wife and Ms. Moses and Wife and Mr. Russ because Wife has not met her burden of proof to establish that the privilege applies to any specific communication at issue.

It is not necessary for us to give an advisory opinion as to whether Wife waived her privilege pursuant to the "subject matter waiver doctrine" as defined in *Ctr. Partners, Ltd. v. Growth Head GP, LLC*, 981 N.E.2d 345, 356-58 (Ill. 2012), which was cited by the parties and the Trial Court. This is so because of Wife's inability to establish attorney-client privilege concerning any of the specific meetings and communications

concerning whether Wife should report Husband's actions to law enforcement in the first place.

In her appellate brief, Wife has raised an additional issue concerning whether she should be awarded attorney's fees and costs incurred during this appeal. According to Wife, she should be awarded attorney's fees and costs pursuant to the parties' antenuptial agreement. However, this is an interlocutory appeal involving only the issue of whether attorney-client privilege applied to certain communications between Wife and her attorneys. Whether an award of attorney's fees is appropriate is not an issue before this Court during this interlocutory appeal. Plus, Wife has been unsuccessful in her appeal.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion. The costs incurred on appeal are assessed against the appellant, Dana Marlene Pagliara, and her surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE