IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 19, 2021 Session

# IN RE LUCAS H.

**Appeal from the Circuit Court for Shelby County**
**No. CT-004555-18   James F. Russell, Judge**

———————————————————————

## No. W2020-00122-COA-R3-JV

———————————————————————

This is an appeal from a denial of relief pursuant to a common law writ of certiorari arising out of a dependency and neglect case brought by Father against Mother in the juvenile court. The Guardian *ad Litem* appointed in the dependency and neglect case filed a motion to compel Mother to release copies of her mental health records, arguing that she is entitled to them under Tennessee Supreme Court Rule 40 and Tennessee Code Annotated section 37-1-411. In turn, Mother objected, arguing that her records are privileged, that she had not waived her privilege, and that the Guardian *ad Litem* was not otherwise entitled to the records. The juvenile court issued an order compelling Mother to release copies of her mental health records to the Guardian *ad Litem*. Mother thereafter filed a petition for writ of certiorari with the circuit court, seeking review of the juvenile court's interlocutory order. The circuit court found the juvenile court's actions proper under the writ of certiorari standard and granted Mother no relief. For the reasons contained herein, we reverse the decision of the circuit court and find that Mother is entitled to the relief sought under the common law writ of certiorari.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and KENNY ARMSTRONG, JJ., joined.

Larry Rice and Erin O'Dea, Memphis, Tennessee, for the appellant, Rachel K. D.

Matthew R. Macaw, Memphis, Tennessee and Mitzi Johnson, Collierville, Tennessee, for the appellee, Daniel T. H.

Laura L. English, Memphis, Tennessee, Guardian Ad Litem.

# OPINION

## BACKGROUND AND PROCEDURAL HISTORY

Rachel K. D. ("Mother") and Daniel T. H. ("Father") were never married and share one minor child together, Lucas H.[1] ("Child"), who was born on October 26, 2016. The parties initially met in Alcoholics Anonymous and are now in recovery. In late 2017, after almost five years of sobriety, Mother relapsed for a short period of time. During Mother's relapse, the parties' relationship ended.

On January 9, 2018, Father filed a petition in the Juvenile Court of Shelby County, Tennessee ("Original Petition"), which included, among other matters, a request that Child be found dependent and neglected. At the time of filing, Mother was the sole custodial parent of Child. Father's Original Petition sought a finding of dependency and neglect on the part of Mother due to her alleged drug use. At no point in Father's Original Petition did he present any instances or allegations specifically implicating harm to Child.

On Monday, January 15, 2018, prior to being served with Father's Original Petition, Mother voluntarily checked herself into Bradford Health Services in Pulaski, Tennessee for treatment. Child was placed in Father's care while Mother was in treatment. Mother remained there until January 21, 2018, at which time she transferred to Bradford Health Services in Madison, Alabama to continue her in-patient treatment. Mother was released from care on February 1, 2018, and thereafter obtained a police escort to accompany her to Father's home to get Child. Once Mother arrived at Father's home, Father refused to return Child to Mother. Ultimately, Child's paternal grandmother brought Child out to Mother. After Mother left Father's residence with Child, Father contacted the Shelby County Sheriff's Office, requesting a welfare check of Child at Mother's home, after which Child was determined to be in good health.

On February 7, 2018, the parties appeared for a hearing on Father's Original Petition. An agreed order on visitation was entered, providing Mother with four days of overnight parenting time every week, with the maternal grandmother serving as supervisor. Father was permitted three days of unsupervised overnight parenting time. Per the order, Mother also agreed to submit to random urinalysis drug screening, which Father would be permitted to request weekly.[2]

The previously appointed Guardian *ad Litem* ("GAL") conducted a home visit with

---

[1] This Court has a policy of protecting children's identities in certain judicial proceedings. Therefore, when appropriate, we will present certain names by their initials.

[2] Mother contends that, as of the time of her filing this appeal, Father has not requested that Mother submit to any random drug screenings. According to Mother's brief, she has seventeen negative drug tests, which includes tests requested by both the Department of Children's Services and the Guardian ad *Litems* that were involved in this case.

Mother and Child on March 26, 2018. Following the GAL's visit, Mother's counsel offered the GAL the opportunity to request random urinalysis drug screens from Mother at any time. The Department of Children's Services ("DCS") also initiated an investigation, appearing at Mother's residence the same day as the GAL and administering a random mouth swab drug screen, which Mother passed. DCS ultimately closed its investigation after a follow up visit to Mother's home and Mother passing the earlier drug screen. Shortly thereafter, the GAL requested that Mother release all of her rehabilitation records to the GAL for her review. In addition to other information, the requested records would have included Mother's privileged psychotherapy notes. In response to the GAL's request, Mother asserted her statutory privilege to the treatment records due to the psychotherapy notes. The GAL then filed a motion for release of the records on April 2, 2018, requesting that the juvenile court order Mother to release her privileged records.

A hearing on the GAL's motion was conducted on May 24, 2018, during which the GAL acknowledged that she had "no issues with [Mother's] home and her interactions with her child." Instead, relying on both Tennessee Code Annotated section 37-1-411 and Supreme Court Rule 40, the GAL contended that she was legally entitled to Mother's medical records. Furthermore, as to Mother's drug screens, the GAL noted that these screens "were not as random as [she] would have liked," despite the fact that the GAL herself had been given the opportunity to request random tests from Mother but had failed to do so. In support of her request for Mother's records, the GAL maintained that she wanted to review the records in order "to verify that Mother did go to these facilities; that she followed the recommendations; that she completed the programs and moving forward what would be the recommendations." In response to the GAL's alleged basis for requesting Mother's privileged medical records, Mother's counsel offered to provide the requested information through affidavits from the facilities Mother had attended for treatment without waiving Mother's privilege to her psychotherapy records. The GAL declined Mother's counsel's offer, arguing that these affidavits would not provide her with the appropriate information.

On May 25, 2018, the juvenile court entered an order granting the GAL's motion. Subsequently, on May 31, 2018, the juvenile court entered a revised order, requiring Mother to sign a release to allow the GAL to review all of her treatment records. However, Mother refused to sign a release based on her intention to appeal the May 31st order. The GAL filed a motion to compel on June 19, 2018, seeking an order from the court compelling Mother to sign the medical release. Mother subsequently filed a motion for a Rule 9 appeal on June 22, 2018, seeking an interlocutory appeal and a stay of the juvenile court's order. A hearing on both motions was held on June 27, 2018. At the hearing, the GAL argued that obtaining Mother's privileged medical records was "standard practice," while Mother argued that the juvenile court should grant her requested interlocutory appeal to prevent an irreparable injury. The juvenile court denied Mother's request for a Rule 9 appeal, however, it did agree to continue the trial to allow Mother to seek a Rule 10 appeal.

Mother subsequently filed an application for a Rule 10 appeal and a motion to stay with this Court. In so filing, she argued that the juvenile court improperly relied on Rule 40 and Tennessee Code Annotated section 37-1-411. In response, this Court issued an order dismissing Mother's Rule 10 appeal, holding that the proper method for an interlocutory review of the juvenile court's order was to file a petition for common law writ of certiorari to the circuit court. Thereafter, Mother filed her petition for writ of certiorari in the Circuit Court of Shelby County.

In her petition to the circuit court, Mother argued that her treatment records were protected by the psychologist-patient privilege and there existed no exception either under the law or the facts of this case. Furthermore, Mother contended that Rule 40 does not entitle the GAL to the records, nor does it state that the mere filing of a dependency and neglect petition automatically abrogate the privilege at issue. Mother further argued that in order to pierce the psychologist-patient privilege that exists under Tennessee Code Annotated section 63-11-213, there must be an allegation of harm to the child who is the subject of the dependency and neglect proceeding. Here, Mother argued that Father made no allegation that the child was harmed due to Mother's relapse, and that the privilege can only be pierced in the most compelling circumstances.

On May 10, 2019, the Shelby County Circuit Court ruled that the juvenile court "has not conducted these proceedings in any way without jurisdiction or unlawfully up to this point, and the Juvenile Court's *Interlocutory Order* should be followed in its entirety." This appeal eventually ensued.[3]

## ISSUES PRESENTED

Mother, Father, and the GAL[4] each filed their own respective appellate briefs, presenting several issues for our review on appeal. In the interest of clarity, we have determined the issues to be as follows:

1. Whether the circuit court erred in denying Mother relief in her petition for common law writ of certiorari.

2. Whether Mother is entitled to an award of attorney's fees on appeal.

3. Whether Father is entitled to an award of attorney's fees on appeal.

## DISCUSSION

___

[3] Prior to the pendency of this Rule 3 appeal, Mother also attempted to seek a Rule 9 appeal in this Court from an interlocutory order of the circuit court, as we will discuss later in this Opinion.

[4] The initial GAL appointed in this case ultimately withdrew due to obtaining new employment. The current GAL was subsequently appointed to replace her.

*Whether the Order Being Appealed is Final Pursuant to the Tennessee Rules of Appellate Procedure*

Initially, we find it pertinent to address the requirement of finality of judgments as it relates to the present matter. Tennessee Rule of Appellate Procedure 3(a) states, in part:

> Except as otherwise permitted in Rule 9 and in Rule 54.02 Tennessee Rules of Civil Procedure, if multiple parties or multiple claims for relief are involved in an action, any order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before entry of a final judgment adjudicating all the claims, rights, and liabilities of all parties.

Tenn. R. App. P. 3(a).

In the present case, we have determined that there is not yet a final judgment in this case. Previously, in August of 2019, Mother filed an application for an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. However, in an order dated September 6, 2019, this Court dismissed Mother's application, instead noting that the only issue left for disposition in the case was that of attorney's fees. Thus, this Court opined that the circuit court "should be able to expeditiously provide a ruling" that would fully dispose of the case and that a Rule 3 appeal would then be available to Mother and would "adequately" meet her needs. As a result, the application for interlocutory review was denied.

In January of 2020, the circuit court entered its subsequent order purporting to have adjudicated all the issues, including the issue of attorney's fees. However, upon a closer review of the circuit court's order, it did not do so. Regarding the issue of attorney's fees, the circuit court stated, "Father's request for an award of attorney's fees and suit expenses is DENIED but Father is granted leave [to] renew his application for attorney's fees and suit expenses with the trial court at the absolute conclusion of the entire matter." Thus, while the circuit court nominally denied Father's request for attorney's fees, it ultimately left the matter open, leaving Father with the ability to later renew his request at the conclusion of the entire matter. Because the circuit court essentially allowed Father to reserve his request for attorney's fees for future disposition, we do not find this matter to be final within the meaning of Rule 3 of the Tennessee Rules of Appellate Procedure.

Although we have determined that the order at issue here is not final within the meaning of Rule 3, pursuant to Rule 2 of the Tennessee Rules of Appellate Procedure, "[f]or good cause, including the interest of expediting decision upon any matter, the Supreme Court, Court of Appeals, or Court of Criminal Appeals may suspend the requirements or provisions of any of these rules in a particular case on motion of a party or

on its motion and may order proceedings in accordance with its discretion[.]"[5]  In the present matter, we find this to be an appropriate circumstance which merits the suspension of the rules.  Primarily, we note both the protracted nature of the litigation as well as the need and desire for an expedited decision, as the matter involves a minor child.  Accordingly, we believe that there should be a resolution regarding Mother's request for certiorari relief and therefore suspend the finality requirements for this appeal pursuant to Rule 2 and address the case on its merits.

*Mother's Petition for Common Law Writ of Certiorari*

We first address Mother's common law writ of certiorari to the circuit court to determine whether it was the appropriate vehicle to provide her redress from the juvenile court's order.  Although not expressly stated as an issue, both Father and the GAL, in their briefs, contend that Mother's request for relief under the common law writ of certiorari was improper because her argument, as Father specifically asserts, does not pertain to a "fundamental illegality or failure to proceed according to the essential requirements of the law."  Based on our review of the record on appeal, we find that Mother's common law writ of certiorari was properly brought before the circuit court.

"A [w]rit of [c]ertiorari is an order from a superior court to an inferior court to send up a record for review." *Utley v. Rose*, 55 S.W.3d 559, 563 (Tenn. Ct. App. 2001). In Tennessee, there are two forms of a writ of certiorari: (1) the common law writ of certiorari, codified at Tennessee Code Annotated section 27-8-101; and (2) the statutory writ of certiorari, codified at Tennessee Code Annotated section 27-8-102. *Admin. Res., Inc. v. Tenn. Dep't of Commerce & Ins.*, No. M2010-01199-COA-R3-CV, 2011 WL 2176387, at *5 (Tenn. Ct. App. June 2, 2011).  In the proceedings below, Mother utilized the common law writ of certiorari.  A common-law writ of certiorari is considered an "extraordinary judicial remedy." *Heyne v. Nashville Bd. of Pub. Educ.*, 380 S.W.3d 715, 728 (Tenn. 2012) (citing *State v. Lane*, 254 S.W.3d 349, 355 (Tenn. 2008)).  The scope of judicial review available via a common-law writ is "quite limited," *id.* (citing *Harding Acad. v. Metropolitan Gov't of Nashville & Davidson Cnty.*, 222 S.W.3d 359, 363 (Tenn. 2007)), and "applies to both the trial court and to this Court." *Lamar Tenn., LLC v. Murfreesboro Bd. of Zoning Appeals*, 336 S.W.3d 226, 232 (Tenn. Ct. App. 2010) (citing *Wright v. Tenn. Peace Officer Standards & Training Comm'n*, 277 S.W.3d 1, 8 (Tenn. Ct. App. 1988)). Prior Tennessee case law provides us with a guide as to the limited circumstances in which a common law writ of certiorari may appropriately lie. As noted by our Supreme Court in *State v. Lane*, a common-law writ of certiorari has been deemed appropriate to correct: (1) fundamentally illegal rulings; (2) proceedings inconsistent with essential legal requirements; (3) proceedings that effectively deny a party his or her day in court; (4) decisions beyond the lower tribunal's authority; (5) plain and palpable abuses of discretion; and (6) proceedings "'[w]here a party has lost a right or interest that may never be

_____

[5] The rule does identify certain exceptions which are not at issue here.

- 6 -

recaptured.'" *State v. Lane*, 254 S.W.3d 349, 355 (Tenn. 2008); *see also State v. Johnson*, 569 S.W.2d 808 (Tenn. 1978) (also explaining the appropriate circumstances warranting a common law writ of certiorari). As will be discussed in more detail, *infra*, given the nature of the privilege at stake in this case, the present matter uniquely implicates a right or interest that is subject to being lost forever if not protected.

In order to explain how the protection of Mother's privilege in this case properly falls within the limited circumstances in which the common law writ of certiorari appropriately lies, we must understand the implications of eroding the privilege at issue, specifically, the psychologist-patient privilege.[6] "Tennessee law recognizes a privilege against compelled disclosure of confidential communications between a psychologist and client." *Culbertson v. Culbertson*, 393 S.W.3d 678, 683 (Tenn. Ct. App. 2012) (*Culbertson I*). The importance of the psychologist-client privilege was emphasized by the United States Supreme Court wherein the Court explained the purposes behind this evidentiary privilege, noting:

> Effective psychotherapy … depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears. Because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace. *For this reason, the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment.*

*Jaffree v. Redmond*, 518 U.S. 1, 10 (1996) (emphasis added). Furthermore, Tennessee Code Annotated section 63-11-213 states, in pertinent part:

> [T]he confidential relations and communications between licensed psychologist or, psychological examiner or, senior psychological examiner or certified psychological assistant and client are placed upon the same basis as those provided by law between attorney and client; and nothing in this chapter shall be construed to require any such privileged communication to be disclosed. [[7]]

---

[6] At the risk of delving into semantics, we note that, in the underlying matter, the GAL was specifically seeking notes from Mother's psychotherapy sessions. Although we acknowledge the differences between a psychologist and a psychotherapist, such confidential communications with a psychotherapist are included under the psychologist-patient privilege, and thus, we will be referring to the privilege as such throughout the body of this Opinion. *See Culbertson v. Culbertson*, 455 S.W.3d 107, 133–34 (Tenn. Ct. App. 2014) (*Culbertson II*).

[7] As noted by this Court in *Culbertson I*, the language of this statute indicates our legislature's choice to "treat the confidential communications between a psychologist and client the same as those between an attorney and client." *Culbertson I*, 393 S.W.3d at 684.

Tenn. Code Ann. § 63-11-213.[8]

In light of the foregoing, it is essential to emphasize that the importance of the psychologist-patient privilege lies in the fostering of an environment between the patient and his or her psychologist that is conducive to treatment and recovery. As such, once this privilege is lost by disclosure, the link between confidentiality and communication is effectively broken and no longer reparable to its previous form. Thus, a trial court's action in piercing or disregarding an individual's psychologist-patient privilege presents a potential harmful ramification that may ultimately result in a permanent setback for the individual seeking treatment. As such, taking the above factors into consideration, we conclude that this privilege is of such a nature as to implicate a right or interest that may never be recaptured once lost, thus making common-law writ of certiorari review an appropriate legal vehicle to address issues concerning the potential loss of the privilege.

As a procedural matter, Mother employed the only method available to her in seeking an interlocutory review of the juvenile court's order. As noted previously, when this Court denied Mother's request for a Rule 10 interlocutory appeal from the juvenile court, we cited previous authority, observing that the "review of an interlocutory decision of a juvenile court in a dependency and neglect proceeding may be had only by filing a petition for a common law writ of certiorari in circuit court." There is simply no other existing avenue of appeal available to Mother that would enable her to protect her privilege prior to the juvenile court's final disposition. Moreover, seeking review of her privilege at that point would be of no avail considering the nature of the interest at stake. This is, as our Supreme Court has noted, "a critical consideration" when "entertaining and acting upon" this common law writ of certiorari. *Johnson*, 569 S.W.2d at 815–16 As former Justice Henry explained,

> The mere fact that an appeal may ultimately afford a vehicle for presentation of the errors asserted may well be of no significance. *The right or interest sought to be protected may be eroded or devitalized notwithstanding the successful pursuit of an appeal.* Again, the ultimate test must be whether, absent the use of the common law writ, either party … loses a right or forfeits an interest that can never be recaptured.

*Id.* (emphasis added).[9] As such, we find that in the present set of circumstances, absent an avenue of appeal prior to the juvenile court's final disposition, Mother's statutory privilege

---

[8] As will be discussed, *infra*, there does exist an exception to this evidentiary privilege in the form of Tennessee Code Annotated section 37-1-411. However, as we will note, we do not find that the facts of the underlying matter come under the purview of that statute.

[9] Although we note the *Johnson* Court's discussion concerning the common law writ of certiorari concerned a criminal case, we ascertain no reason as to why the principles discussed should not be extended to cases reviewed under this Court's jurisdiction, as the notion of privilege remains a substantive right regardless of whether the case is a criminal or civil matter.

would ultimately be lost, with no possibility of remedy or recapture.

We also note that courts in other jurisdictions have similarly held a writ of certiorari to be a proper method of review when issues arise concerning the psychologist-patient privilege. As this Court previously did in *Culbertson II*, we look to Florida for further guidance and support on how to approach this issue. *See Culbertson II*, 455 S.W.3d at 134 ("The more protective view of the privilege has been called the 'Florida approach'. . . . The *Culbertson I* Court adopted the more protective approach[.]"). Similar to Tennessee, Florida recognizes several enumerated privileges, including the psychologist-patient privilege. *See Segarra v. Segarra*, 932 So.2d 1159, 1160 (Fla. 3rd DCA 2006). Florida courts have also previously indicated that a writ of certiorari is an appropriate manner of review for a discovery order abrogating a party's privilege, reasoning that "[t]he entry of an order compelling the disclosure of communications protected by a legal privilege is a departure from the essential requirements of the law," *see id.* at 1160 (citing *Nussbaumer v. State*, 882 So.2d 1067, 1072 (Fla. 2d DCA 2004), and that "[d]iscovery of information protected by privilege 'may reasonably cause material injury of an irreparable nature.'" *Lacaretta Rest. v. Zepeda*, 115 So.3d 1091, 1092 (Fla. 1st DCA 2013) (quoting *Allstate Ins. Co. v. Langston*, 655 So.2d 91, 94 (Fla. 1995)). As defined by Black's Law Dictionary, "irreparable" is that which is "[i]ncapable of being rectified, restored, remedied, cured, regained, or repaired; that cannot be made right or good." BLACK'S LAW DICTIONARY 958 (10th ed. 2019).

With this in mind, we again highlight the Tennessee Supreme Court's discussion in *State v. Johnson,* wherein it expressly provided that a common law writ of certiorari is a proper method of review for a "right or interest that may never be recaptured." *Johnson*, 569 S.W.2d at 815. In ascertaining the *Johnson* Court's clarification on the common law writ of certiorari, we equate the notion of something that "may never be recaptured" with that of "irreparable" as so designated by the Florida courts. Indeed, the loss of the psychologist-patient privilege through a discovery order initiated by a trial court, as occurred here, implicates interests that may not be recaptured or remedied. Essentially, this loss is, in the terminology of the Florida courts, irreparable. Based on our own interpretation of the Tennessee Supreme Court's discussion in *State v. Johnson*, as well as the guidance provided by Florida case law, we conclude that the psychologist-patient privilege constitutes an individual's right or interest that may not be recaptured, as it is not one that may be repaired or regained once lost.

Having determined that an individual's psychologist-patient privilege implicates a right or interest that may not be recaptured, and may therefore be subject to appropriate redress under a writ of certiorari review, we now turn to the facts of the instant case.

*Whether the Circuit Court Erred in Finding that Mother was Not Entitled to Relief*

As a preliminary matter, we note that our discussion herein is centered on the notion of the privilege as it pertains to a dependency and neglect proceeding in particular. The contention in this case largely revolves around the interpretation of Tennessee Supreme Court Rule 40 and Tennessee Code Annotated section 37-1-411 and what right the GAL has regarding Mother's psychotherapy notes, among other materials in Mother's mental health records. Mother argues that her privilege has not been waived and there are no facts present that would allow her privilege to be pierced. For the reasons set forth below, we conclude that the juvenile court acted improperly such that the circuit court erred in not granting Mother relief under her petition for common law writ of certiorari.

Tennessee Supreme Court Rule 40 guidelines set forth obligations for GALs involved with children who are the subject of dependency and neglect proceedings in juvenile court pursuant to section 37-1-149.[10] Tenn. Sup. Ct. R. 40(a). Included among the GAL's responsibilities and duties under Rule 40 is "conducting an independent investigation," which may involve "[o]btaining necessary authorization for release of information, including an appropriate discovery order," Tenn. Sup. Ct. R. 40(d)(1)(i), and "[r]eviewing records of parent(s) or legal guardian(s), including, when relevant to the case, psychiatric, psychological, substance abuse, medical, criminal, and law enforcement records[.]" Tenn. Sup. Ct. R. 40(d)(1)(vii). In analyzing this rule, we note the reference to obtaining an "appropriate discovery order." Tenn. Sup. Ct. R. 40(d)(1)(i). Although not expressly clarified within the rule, we interpret an "appropriate discovery order" to include orders compelling discovery where a party is not inclined to provide certain information to the opposing party. Here, the juvenile court's order compelling Mother to release her mental health records would undoubtedly come within the purview of this section of Rule 40.

Pursuant to Rule 305 of the Tennessee Rules of Juvenile Practice and Procedure, "[t]he court shall decide any motion relating to discovery in accordance with the Tennessee Rules of Civil Procedure."[11] Tenn. R. Juv. P. 305(f). Here, the GAL filed a discovery

---

[10] Tennessee Code Annotated section 37-1-149 states, in pertinent part:

> (a)(1) The court at any stage of a proceeding under this part, on application of a party or on its own motion, shall appoint a guardian ad litem for a child who is a party to the proceeding if such child has no parent, guardian or custodian appearing on such child's behalf or such parent's guardian's or custodian's interests conflict with the child's or in any other case in which the interests of the child require a guardian. The court, in any proceeding under this part resulting from a report of harm or an investigation report under §§ 37-1-401 – 37-1-411, shall appoint a guardian ad litem for the child who was the subject of the report. A party to the proceeding or the party's employee or representative shall not be appointed.

Tenn. Code Ann. § 37-1-149(a)(1).

[11] Rule 305 is located in the section of the Tennessee Rules of Juvenile Practice and Procedure

motion requesting the release of Mother's medical records. Therefore, the juvenile court was still subject to the rules of discovery on this particular matter. Generally, "[p]arties may obtain discovery regarding any matter, **not privileged**, which is relevant to the subject matter involved in the pending action[.]" Tenn. R. Civ. P. 26.02 (emphasis added).

Here, in its order, the juvenile court expressly found that "if Supreme Court Rule 40 was limited by the applications of the privilege in T.C.A. 63-11-213, it would have said so." It also held that "Supreme Court Rule 40 [does not require] that any limitations be placed on the Guardian ad Litem's access to mother's records other than the plain language of the rule itself, that is, review of records deemed by the court to be relevant." Although we acknowledge that the language provided in Rule 40 itself does not expressly address privilege, we do not agree with the juvenile court that such omission signifies the abrogation of said privilege. Moreover, it is of no surprise to us that Rule 40 does not expressly touch on the issue of privilege. After all, "[t]he creation of a privilege is *substantive law* which, at least in large part, is within the province of the legislature." *Willieford v. Klepper*, 597 S.W.3d 454, 468 (Tenn. 2020) (emphasis added). Our own Supreme Court has noted that its rules may not "abridge, enlarge, or modify" a substantive right. *Id.* at 465 (citing Tenn. Code Ann. § 16-3-403). Therefore, as we understand it, Rule 40 does not abrogate Mother's privilege as Father and the GAL assert. Rather, the disposition of such privilege is addressed via the requirement that a GAL obtain "necessary authorization" to review relevant documents and records. *See* Tenn. Sup. Ct. R. 40(d)(1)(i).

In addition to the arguments concerning Rule 40, here, both Father and the GAL also relied on section 37-1-411 and section 37-1-403 in arguing that the GAL is entitled to Mother's medical records. In so doing, they contended that Mother's psychologist-patient privilege was somehow inapplicable under the present set of circumstances pursuant to section 37-1-411 due to the nature of the harm supposedly alleged. Tennessee Code Annotated section 37-1-411 states, in pertinent part,

> [n]either the husband-wife privilege as preserved in § 24-1-201, nor the psychiatrist-patient privilege as set forth in § 24-1-207, nor the psychologist-patient privilege as set forth in § 63-11-213 is a ground for excluding evidence regarding harm or the cause of harm to a child in any dependency and neglect proceeding resulting from a report of such harm under § 37-1-403 or a criminal prosecution for severe child abuse.

Tenn. Code Ann. § 37-1-411. In relying on this statute, Father and the GAL specifically maintained that Father's Original Petition suffices as a report of harm under section 37-1-403. A dependency and neglect proceeding brought pursuant to a report under Tennessee Code Annotated section 37-1-403 requires a report of some form of "wound, injury, disability, or physical or mental condition" resulting in harm to the child. Tenn. Code Ann.

---

concerning dependency and neglect proceedings.

- 11 -

§ 37-1-403(a)(1).

In determining whether the GAL may properly rely on section 37-1-411 to obtain Mother's medical records, it is important to emphasize that this statute specifically conditions the abrogation of a party's privilege on whether the underlying matter involves a criminal prosecution for severe child abuse *or* a "dependency and neglect proceeding resulting from a report of . . . harm under § 37-1-403." *Id.* In interpreting this statute, we presume that the Legislature intended what it stated in the statute, following the principle of *expressio unius est exclusio alterius*. *See Effler v. Purdue Pharma L.P.*, 614 S.W.3d 681, 688 (Tenn. 2020). "This canon of statutory interpretation means that 'the expression of one thing implies the exclusion of others." *Id.* at 689 (quoting *Rich v. Tenn. Bd. of Med. Exam'rs*, 350 S.W.3d 919, 927 (Tenn. 2011)). As such, we infer that, if the Legislature had intended for section 37-1-411 to extend to *any* dependency and neglect proceedings, it would have stated so in the statute. Instead, section 37-1-411 is clear that privilege is abrogated in a dependency and neglect proceeding "resulting from a report of . . . harm under § 37-1-403." Thus, in order for the GAL to invoke section 37-1-411, the underlying proceeding must constitute a dependency and neglect proceeding resulting from a report of harm under section 37-1-403.

The matters underlying this appeal were initially brought before the juvenile court in the form of a dependency and neglect proceeding by Father. In his brief, Father asserts that his Original Petition suffices as the requisite "report" contemplated by Tennessee Code Annotated section 37-1-403, thus warranting application of Tennessee Code Annotated section 37-1-411. However, we do not view the underlying dependency and neglect proceeding as "resulting from a report of . . . harm under § 37-1-403" such as to come within the purview of section 37-1-411. Section 37-1-403(a)(2) provides that,

> [a]ny such person with knowledge of the type of harm described in this subsection (a) shall report it, by telephone or otherwise, to the:
>
> (A) Judge having juvenile jurisdiction over the child;
> (B) Department, in a manner specified by the department, either by contacting a local representative of the department or by utilizing the department's centralized intake procedure, where applicable;
> (C) Sheriff of the county where the child resides; or
> (D) Chief law enforcement official of the municipality where the child resides.

Tenn. Code Ann. § 37-1-403(a)(2). Regardless of whether Father's filing of his Original Petition constitutes a "report" to the judge pursuant to the statute, we note that this record does not reflect that any further necessary action was taken consistent with the other requirements set forth in section 37-1-403. Specifically, we point to section 37-1-403(c)(1), which provides,

[i]f a law enforcement official or **judge** becomes aware of known or suspected child abuse, through personal knowledge, **receipt of a report**, or otherwise, **such information shall be reported to the department**[12] **immediately upon the receipt of such information**, and, where appropriate, the child protective team shall be notified to investigate the report for the protection of the child in accordance with this part. Further criminal investigation by such official shall be appropriately conducted in coordination with the team or department to the maximum extent possible.

Tenn. Code Ann. § 37-1-403(c)(1) (emphases added). Thus, as we perceive it, section 37-1-403 contemplates a procedure by which, an individual shall report any allegations of abuse pursuant to section 37-1-403(a)(1) either to DCS, or to other individuals enumerated in the statute who are then required to immediately refer the report to DCS. *See* Tenn. Code Ann. § 37-1-403(c)(1). After receiving said report, the child protective team may thereafter initiate an investigation into the matter "where appropriate." *Id.* As it often does, DCS may, as a result of the investigation, initiate a dependency and neglect proceeding pursuant to its findings. It is at this point we understand that section 37-1-411 may be invoked to obtain a party's records, as indicated by the statute's own language, wherein it notes that the psychologist-patient privilege is inapplicable in "any dependency and neglect proceeding **resulting** from a report of such harm under § 37-1-403." Tenn. Code Ann. § 37-1-411 (emphasis added).

Although we acknowledge that a "report" under section 37-1-403 may be made to a judge having juvenile jurisdiction over the child, we are not convinced that the unilateral filing of Father's Original Petition *alone* permits the GAL to invoke section 37-1-411. Rather, as we construe section 37-1-411, a dependency and neglect proceeding *results* from a report of harm when it prompts action from the department to which it was reported. Pursuant to section 37-1-403, that department is DCS. Indeed, as we interpret the statute, a dependency and neglect proceeding resulting from a report of harm under section 37-1-403 denotes involvement from DCS. We do *not* construe section 37-1-411 to abrogate a party's privilege merely because a parent has filed a dependency and neglect petition.

Although it is unclear as to how it was prompted,[13] DCS initiated an investigation

---

[12] "Department" is defined in Title 37 as "the department of children's services." Tenn. Code Ann. 37-1-102(12).

[13] Although the record reflects that DCS conducted an investigation, there is nothing in this record to reflect who made the referral. Regardless, Father contends that "the allegation of harm was reported to Juvenile Court by way of his filing the [Original Petition]." As such, Father is asserting that his Original Petition qualifies as a report under section 37-1-403. However, there is no indication that the information contained in his Original Petition was ever transmitted to DCS as required by section 37-1-403. Moreover, based on the record on appeal, there is no indication that any of the information in Father's petition prompted DCS's investigation.

- 13 -

on March 26, 2018, approximately 10 weeks after Father filed his Original Petition. This investigation was ultimately closed after two home visits and a drug test, which Mother passed. No further action was taken and DCS has had no litigious involvement with this proceeding. Thus, while there is certainly no indication in the record that DCS took any action which was precipitated by Father's Original Petition, the record also indicates that DCS never sought to intervene in the pending matter or pursue a dependency and neglect finding as a result of its own investigation. As such, we are perplexed as to how the underlying juvenile court proceeding can be said to be a "dependency and neglect proceeding resulting from a report of [harm or the cause of harm to a child] under § 37-1-403." Based on these facts, it would be improper for the GAL to invoke section 37-1-411 when the underlying matter has not "result[ed] from a report of . . . harm under § 37-1-403." *See id.* Accordingly, because we conclude that the underlying juvenile court proceeding does not suffice as a dependency and neglect proceeding resulting from a report of harm pursuant to section 37-1-403, the GAL cannot invoke section 37-1-411 to obtain Mother's privileged mental health records.[14]

Having determined that the underlying matter does not constitute a dependency and neglect proceeding resulting from a report under section 37-1-403, we briefly address the juvenile court's improper order, compelling Mother to release her medical records. As established, Mother's privilege has been neither pierced nor waived, and, therefore, the GAL is not entitled to obtain her records under Rule 40 or Tennessee Code Annotated section 37-1-411. In its order, the juvenile court noted that, if the GAL is unable to obtain these records, she will be unable to efficiently carry out her duties as a GAL. We disagree. Largely at contention here remains the notes from Mother's psychotherapy sessions. At

---

[14] Although we find that the underlying dependency and neglect proceeding did not result from a report of harm pursuant to section 37-1-403, we also find it pertinent to note that the allegations pled by Father do not rise to the requisite level of harm as enumerated in section 37-1-403(a)(1). This section contemplates harm consisting of "any wound, injury, disability, or physical or mental condition." Tenn. Code Ann. § 37-1-403(a)1). As such, we understand section 37-1-403(a)(1) to require some form of actual harm evinced rather than a hypothetical or potential harm.

In looking at the allegations contained in Father's Original Petition, we find no assertions or allegations that Child here suffered actual harm, whether mentally or physically. Although we recognize that the definitions and circumstances under which a Child may be deemed "dependent and neglected" allow for allegations concerning a potential for harm or an endangerment to Child, *see* Tennessee Code Annotated section 37-1-102(b)(13)(F) (emphasis added) (stating that a dependent and neglected child may be one "[w]ho is in such condition of want or suffering or is under such improper guardianship or control as to injure or **endanger** the morals or health of such child or others"), we find that section 37-1-403 denotes something much more serious and present that requires immediate referral and attention from DCS by way of its express mention of "wound, injury, disability, or physical or mental condition" as currently existing in a child. *See* Tenn. Code Ann. § 37-1-403(a)(1). Father may very well have properly pled allegations that would be sufficient to find Child dependent and neglected under the definitions set forth in section 37-1-102(b)(12). That is not for this Court to decide. However, asserting that a child is dependent and neglected under section 37-1-102(b)(12) is not necessarily synonymous with the nature of a dependency and neglect proceeding as contemplated under section 37-1-411.

trial, the GAL contended that she needed Mother's records "to verify that Mother did go to these facilities; that she followed the recommendations; that she completed the programs and moving forward what would be the recommendations." In response, Mother's counsel proffered to provide the GAL with affidavits from the institutions to show that Mother was in fact admitted to the institutions on certain dates. Mother's counsel contended that these affidavits would reveal the purpose of Mother's treatment, as well as the list of recommendations she was to follow. However, this offer was rejected for reasons that appear unclear. It appears to this Court that Mother is willing to be forthcoming about the purpose of her treatment and recovery from her addiction, provided that she is able to retain her psychologist-patient privilege. We do not view this as an unreasonable position for her to take. If the GAL truly wishes to ensure Mother attended treatment and is following the recommendations given, we ascertain no reason as to why the GAL needs to see Mother's psychotherapy notes to ensure this, especially in light of the fact that no harm to Child has ever been alleged. As we have reiterated throughout this Opinion, section 37-1-411 pertains to dependency and neglect proceedings resulting from a report of harm pursuant to section 37-1-403. Based on our review of the record, the underlying dependency and neglect proceeding was not one resulting from a report of harm pursuant to section 37-1-403. Therefore, there existed no legal basis for the juvenile court to compel Mother to release her mental health records pursuant to section 37-1-411.[15]

In light of the foregoing, we find that the juvenile court erroneously ordered Mother to release her mental health records in contradiction of her privilege. Because of the nature of these records as they pertain to Mother's privilege, this is not a mere technical or inconsequential legal error committed by the juvenile court, but rather an abrogation of Mother's legally protected privilege afforded to her by Tennessee statute. Specifically, we

---

[15] We also note that, in his brief, Father argues that Mother's records may be compelled through Tennessee Code Annotated section 33-3-105. This statute provides, in pertinent part:

> Information that is confidential under § 33-3-103[ ] may be disclosed without the consent of the service recipient if:
> (3) As a court orders, after a hearing, upon its determination that disclosure is necessary for the conduct of proceedings before it and that failure to make the disclosure would be contrary to public interest or to the detriment of a party to the proceedings.

Tenn. Code Ann. § 33-3-105(3). Specifically, Father asserts that if a trial court, after a hearing on the matter, finds that the privileged records are "necessary for the conduct of proceedings," it can compel the disclosure of such records. However, we disagree with Father's interpretation of section 33-3-105. Based on the statutory scheme and applicable case law, it appears that this statute contemplates only those who are within state custody. *See State v. Fox*, 733 S.W.2d 116, 188 n.1 (Tenn. Crim. Ct. App. 1987) (noting that Title 33 of the Tennessee Code deals with those who are in the care and custody of the state); *see also Herman v. Herman*, No. M2012-00395-COA-R10-CV, 2012 WL 1655717, at *2 (Tenn. Ct. App. May 9, 2012) (noting the same and holding that, as mother was not in the care and custody of the State of Tennessee, section 33-3-105 does not apply). Here, as Mother has not been in state custody during her treatment, nor are the facilities she attended state facilities, section 33-3-105 is not applicable to her records. Ultimately, we find this argument to be without merit.

again emphasize that the underlying matter did *not* constitute a dependency and neglect proceeding resulting from a report of harm pursuant to section 37-1-403, such that the GAL may invoke section 37-1-411 to obtain Mother's records. Thus, we find that the juvenile court had no legal basis to invade Mother's psychologist-patient privilege, and its ruling clearly contravened Tennessee law. Moreover, because Mother's psychologist-patient privilege denotes a "right or interest that cannot be recaptured," as we concluded earlier, her petition for common law writ of certiorari was the proper legal vehicle for review of the juvenile court's interlocutory order. As there was no legal basis for the juvenile court to abrogate Mother's privilege, we conclude that the circuit court erred in not granting Mother the relief requested under a writ of certiorari review.

*Attorney's Fees on Appeal*

Father and Mother each argue that they are entitled to attorney's fees on appeal. Having considered the arguments of both parties, we decline to award either party attorney's fees on appeal. As such, each party is responsible for their respective attorney's fees.

CONCLUSION

Based on the foregoing, we reverse the circuit court's order declining Mother relief under her petition for common law writ of certiorari and remand for the circuit court to enter an order granting Mother the relief sought in her writ of certiorari.


     s/ Arnold B. Goldin
     ARNOLD B. GOLDIN, JUDGE